UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MASSACHUSETTS COALITION FOR IMMIGRATION REFORM,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.*, <br><br> Defendants. | Case No. 1:20-cv-03438 (TNM) |

**MEMORANDUM ORDER**

Some three years ago, Plaintiffs sued the Government, seeking vacatur of various immigration policies. They claimed that the policies were procedurally defective because the Government did not first conduct an environmental analysis under the National Environmental Policy Act. In the time since, this case has seen three rounds of dispositive motion briefing and one Amended Complaint. Plaintiffs now seek to amend their Complaint again. This time, the Court denies their request.

**I.**

Plaintiffs sued in November 2020, challenging the Government's immigration policies. Compl., ECF No. 1. While their initial Complaint was barebones, they amended it about ten months later, adding a host of challenges to specific immigration policies. Amend. Compl., ECF No. 17. The Amended Complaint included, as relevant here, a challenge to an unnamed policy that they alleged instructed Customs and Border Patrol agents "to give permission slips to seek more permanent legal status to those illegal border crossers they meet, and to help them board

buses to destinations within the interior of the country." *Id*. ¶¶ 232–34. Plaintiffs refer to this as the "mass release" policy.

But less than two months after Plaintiffs amended their Complaint, it was already out of date. The Government issued a new policy in November 2021 titled "Parole Plus Alternative to Detention." Exhibits at 2–4, ECF No. 58-4. And eight months later, in July 2022, the Government changed policies again, this time to one called "Policy on the Use of Parole Plus Alternatives to Detention to Decompress Border Locations." *Id*. at 5–8. A year later, in May 2023, the Government again changed tack, issuing yet another new policy named "Policy on Parole with Conditions in Limited Circumstances Prior to the Issuance of a Charging Document." *Id*. at 9–15.

While all that was going on, this case proceeded apace. The parties briefed, and the Court ruled on, a motion to dismiss the Amended Complaint. ECF Nos. 19, 22, 23, 27. In December 2022, after the second policy change, the Government turned over the administrative record to Plaintiffs. Oct. 20, 2022 Minute Order; ECF No. 33. And from February through June 2023, the parties briefed cross-motions for summary judgment. ECF Nos. 34, 37, 38, 41, 43, 45. The Court ruled on those motions in September, significantly narrowing the scope of the claims and clarifying which Plaintiffs may have standing to sue. *Massachusetts Coal. for Immgr. Ref. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2023 WL 6388815 (D.D.C. 2023).

Now, Plaintiffs move to again amend their Complaint. They wish to add a new claim addressing the purported "mass release" policy they first identified in 2021. Mot., ECF No. 58. This claim addresses the most recent version of that policy and is offered in response to the Court's finding that their previous claim was moot. *Massachusetts Coal.*, 2023 WL 6388815, at *9. The Government opposes Plaintiffs' motion, and the motion is now ripe for decision.

II.

Plaintiffs seek leave to amend their Complaint under Federal Rule of Civil Procedure 15(d). Mot. at 1. Under Rule 15(d), a court "may, on just terms, permit a party to serve a supplemental pleading." Fed. R. Civ. P. 15(d). Because Rule 15(d) does not set forth a standard for assessing motions filed under it, the Rule 15(a) standard presumptively applies.

Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The three touchstones in deciding whether to grant leave to amend are whether the amendment "will promote the economic and speedy disposition of the entire controversy between the parties," whether it will "cause undue delay or trial inconvenience," and whether it will "prejudice the rights of any of the other parties to the action." *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006). This is a "liberal standard," *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), and in most cases, a court should grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Still, there are limits. The choice whether to grant leave to amend is "within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971). And amendment is sometimes unwarranted—particularly where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party," or where an amendment is futile. *Foman*, 371 U.S. at 182. At times, the Court can also construe a significant delay in moving to amend the Complaint as a constructive waiver of the new claims. *Zenith Radio Corp.*, 401 U.S. at 332. In any event, the Court must always assess the prejudice to the nonmoving party in deciding whether to grant leave to amend. *Id.* at 330–31.

3

### III.

Plaintiffs brought this case in November 2020. Compl. at 50. They amended their Complaint once, as a matter of course, after the Government moved to dismiss. *See* Amend. Compl.; Fed. R. Civ. P. 15(a)(1). They now seek to amend their Complaint a second time, so they require either the written consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a)(2). The Government has denied its consent, Opp'n at 1, ECF No. 60, so the question here is whether the Court should grant leave to amend. It will not.

Plaintiffs' motion comes too late in the day, and would work too much disruption to the trial schedule, to be granted. Consider briefly the procedural history of this case. The first Complaint was filed three and a half years ago, in November 2020. Compl. at 50. The current operative Complaint was filed some ten months later, in September 2021. Amend. Compl. at 113. The parties and the Court have now labored for two and a half years under the operative Complaint, filing and ruling on dispositive motions and conducting discovery.

Allowing amendment now would cause much of that time and effort to go to waste. The Government has had the opportunity to challenge Plaintiffs' claims at both the motion-to-dismiss stage and the summary-judgment stage of this case. Those dispositive motions have winnowed down the live issues to whether Plaintiffs have standing to sue regarding two specific policies. And the Court's upcoming evidentiary hearing is designed to address that issue, and that issue alone.

Permitting amendment now would inject new issues into this case. The Court would need to assess whether Plaintiffs have standing to sue over this new, as-yet-untested claim. That may require re-opening of discovery. More, the Court would need to address the merits of this claim. Although the Court has been able to evaluate Plaintiffs' other claims through successive

rounds of dispositive motion briefing, it has had no such opportunity here. And the Government would be entitled to seek, at a minimum, summary judgment briefing before the evidentiary hearing. *See* Fed. R. Civ. P. 56(a) & (b). But allowing more briefing would require the Court to put off the upcoming evidentiary hearing and delay resolution of this case for several more months. This delay would prejudice the Government.

Plaintiffs state that no further dispositive motion briefing would be necessary. Reply at 10, ECF No. 61. But parties have a general right to file such dispositive motions. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023). And in an Administrative Procedure Act case like this one, summary judgment is ordinarily the mechanism the Court uses to evaluate Plaintiffs' claims. *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1, 9 (D.D.C. 2019). This case illustrates that very principle: Although the Court will soon be holding an evidentiary hearing, that post-summary judgment proceeding addresses solely the Court's jurisdiction, rather than the merits of the case. So it is not true that the Court could leapfrog further dispositive motions and take Plaintiffs' new claims directly to judgment.

The resulting delay counsels strongly against amendment. Congress has expressed its judgment that three years is presumptively too long for a civil case to remain pending in the federal courts. *See* 28 U.S.C. § 476(a)(3). This case has already passed that threshold. The Court is loath to let it linger longer.

Nor is it the case that Plaintiffs have been fully diligent in seeking amendment. *See Foman*, 371 U.S. at 182. The Government turned over the administrative record in December 2022. ECF No. 33. At that point, Plaintiffs were on notice that the policy they had challenged was no longer in effect. Still, they chose not to amend their Complaint. Instead, they made the decision to proceed to summary judgment and argue that the claim was not moot. They were

entitled to make that choice.  But, as a result, they passed up their opportunity to timely amend their Complaint.  *Zenith Radio*, 401 U.S. at 332 (explaining that failure to timely amend complaint may be construed as waiver of right to amend).  The Court cannot further delay this case because they wish to do so now.  *Ackermann v. United States*, 340 U.S. 193, 198 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.").

Indeed, Plaintiffs could have known about the policy changes even before they received the administrative record.  As it turns out, at least one of the policy changes was publicly known as early as September 2022.  *See, e.g.*, Ofc. of the Inspector Gen'l, DHS, U.S. Border Patrol Faces Challenges Administering Post-Apprehension Outcomes Consistently Across Sectors at 4 n.6, 19 n.24 (Sept. 13, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-09/OIG-22-68-Sep22.pdf [https://perma.cc/S7UJ-32LF] (Parole Plus Alternative to Detention).  Still others became public over the next several months and, by the time summary judgment briefing rolled around, all three policy changes were publicly known.  *See Florida v. United States*, 660 F. Supp. 3d 1239, 1257 (N.D. Fla. 2023) (Policy on the Use of Parole Plus Alternatives to Detention to Decompress Border Locations); Muzaffar Chishti & Kathleen Bush-Joseph, U.S. Border Asylum Policy Enters New Territory Post-Title 42, Migration Policy Institute Policy Beat (May 25, 2023), https://www.migrationpolicy.org/article/border-after-title-42 [https://perma.cc/RK7M-RYUM] (Policy on Parole with Conditions in Limited Circumstances Prior to the Issuance of a Charging Document).  Considering the public knowledge of these policy changes, it is not clear that Plaintiffs used appropriate speed in amending their Complaint.

Weighed against the delay in resolving this case, the prejudice to Plaintiffs from denying their motion is minimal.  This denial does not prevent them from raising a claim based on the

new policy in another case.  All it does is avoid tacking on a new claim in *this* case, where doing so would circumvent the Federal Rules' structure for pretrial dispositive motions practice.

In sum, then, the relevant factors weigh against granting leave to amend.  Amending would significantly delay the resolution of this case.  Plaintiffs did not exercise reasonable speed in seeking leave to amend.  And denying amendment would not significantly prejudice Plaintiffs.  In the face of such lopsided interests, the Court must deny the motion, even under Rule 15(a)'s liberal standard.

**IV.**

The Court acknowledges Plaintiffs' predicament.  Attempting to litigate in the face of quickly changing policies can be like playing Whack-a-Mole.  Still, Plaintiffs have not suggested that the Government has changed its policies to evade their lawsuit.  Indeed, the changing policies appear to result at least in part from a complex and dynamic situation at the border.

This lawsuit has already dragged on more than three years.  It was filed during the last presidential administration and, at this pace, it may well continue into the next.  "At some point all litigation must end.  I see no compelling reason for further delaying this one." *Jimenez v. U.S. Dist. Ct.*, 84 S.Ct. 14, 19 (1963) (Goldberg, J., in chambers).  So the Court denies Plaintiffs' motion, and the case will proceed to the evidentiary hearing on Plaintiffs' standing to sue as scheduled.

Accordingly, it is hereby **ORDERED** that the Motion to Amend is **DENIED**.

**SO ORDERED**.

Dated: May 15, 2024                                         TREVOR N. McFADDEN, U.S.D.J.