UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| MASSACHUSETTS COALITION FOR IMMIGRATION REFORM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.* <br><br> Defendants. | Case Nos. 1:20-cv-03438-TNM <br>         1:21-cv-01198-TJK <br>         (consolidated cases) |

## DEFENDANTS' AMENDED PRETRIAL STATEMENT (L.R. 16.5)

In accordance with Local Rule 16.5, Defendant U.S. Department of Homeland Security ("DHS") submits this amended pretrial statement fourteen days before the scheduled June 28, 2024 "post-discovery and pre-hearing" conference. Defendants filed their original statement on May 20, 2024, before the previously scheduled June 3, 2024, pre-hearing conference. ECF No. 68. An evidentiary hearing on Plaintiffs' standing to challenge (1) suspension of further construction of a border wall along the Southwestern border and (2) termination of the Migrant Protection Protocols (MPP) is set for July 31, 2024. To assist the Court in its review of this amended statement and preparation for the June 28 hearing, new items or sections with significant alterations are marked with an asterisk (*). This amended statement supersedes Defendants' original statement.

**\*Status of Discovery**

The Court held an in-person status conference on May 23, 2024, to address Plaintiffs' failures to provide (1) Rule 26(a)(2)(B) expert reports and substantive responses to the United States' contention interrogatories and requests for production of documents. At the conference,

1

the Court declined to order Mr. Scott or Mr. Morgan to provide Rule 26(a)(2)(B) reports with the understanding that both witnesses would testify about their "specialized knowledge" of the border wall and MPP decisions acquired through their federal service—i.e., "the things they did. . . when they were in government service"—and not "to talk about Plaintiffs specifically." May 23, 2024, Hrg. Tr. 15:9-10, 14:8-9 ECF No. 72.  The Court noted that Defendants could object at the hearing should Messrs. Scott and/or Morgan's testimony "run[] into the type of retained expert field that there should have been a report on." *Id.* 16:11-14.

As for written discovery, the Court found the Government's objections to be "well-founded" and ordered Plaintiffs to supplement both their interrogatory and request for production responses by June 6, 2024.  *Id.* 16:18-17:19.  Plaintiffs provided supplemental interrogatory responses as directed on June 6, but did not provide any supplemental responses or produce/identify any additional documents to the Government's document requests.

**Statement of the Case**

The sole purpose of the July 31 hearing is to determine whether the remaining two Plaintiffs have standing to challenge two government actions:  (1) suspension of further construction of a border wall along the southwestern border and (2) termination of the Migrant Protection Protocols ("MPP").  "[T]he Court's upcoming evidentiary hearing is designed to address that issue, and that issue alone." Mem. Order 4, ECF No. 66.

These consolidated cases were originally brought in 2020 by six individuals and one organizational plaintiff that sued three federal agencies – the Department of Homeland Security ("DHS"), the Department of Justice, and the Department of State ("Defendants") – alleging that various immigration decisions required analysis under the National Environmental Policy Act ("NEPA").  With two exceptions, the Court dismissed the claims of all Plaintiffs for lack of

standing.  *See* Mem. and Order, ECF No. 52.[1]  These two excepted Plaintiffs are Steven Chance Smith and Gail Getzwiller, both of whom live and work in southeastern Arizona.  *Id.*  The Court found that it could not resolve whether Plaintiffs Smith or Getzwiller have Article III standing to challenge suspension of border wall construction and termination of MPP without an evidentiary hearing.  So, for the past six months, the Parties have engaged in discovery on standing.  None of Plaintiffs' claims against the Department of Justice or the Department of State survived summary judgment.

Plaintiffs Smith and Getzwiller have the burden to prove by competent trial evidence that they meet *each element* of standing.  *See* Minute Order dated Mar. 21, 2024 ("In order for the Court to find for the Plaintiffs, they must put on evidence on each element of standing sufficient to carry their burden at this stage of the trial.").  At the hearing, the Court "will be able to hear the testimony of the witnesses, make credibility determinations, and accept other evidence the parties may offer" to resolve the question of Plaintiffs' standing.  Mem. and Order 42.

**Statement of Defenses**

At the evidentiary hearing, Mr. Smith and Ms. Getzwiller—not the Government—bear the burden to prove up all three elements of their standing to challenge to DHS's border barrier and MPP decisions.  These elements are: (1) a concrete and particularized injury-in-fact that is (2) fairly traceable to the challenged decisions and (3) may be redressed by a favorable order from the Court.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Because Plaintiffs' injury theory "rel[ies] on the anticipated action of unrelated third parties," *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), they face a heightened burden to show "substantial evidence of a

---

[1] The Court found the alleged injuries of the dismissed Plaintiffs either were not particularized or were clearly not attributable to the Biden Administration's actions that Plaintiffs challenged.  *See* Mem. and Order 19.

causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress." *Id.* Plaintiffs cannot meet their burden.

First, Plaintiffs cannot meet their burden because they cannot establish that either the suspension of border wall construction or termination of MPP caused them any harm. *Compare* Mem. and Order 24. The hearing will show that much of Plaintiffs' declarations—the declarations on which this Court denied the parties' cross-motions for summary judgment—are not based on firsthand observation but on inadmissible hearsay and conjecture. The hearing will also show that neither Plaintiff documented their alleged injuries nor any alleged increase in those injuries since 2021. To the contrary, both witnesses will affirm that the types of injuries they assert here have been occurring on the borderlands for decades and that neither Plaintiff has personal knowledge of the source(s) of the trash they say migrants left on their ranches.

Second, Plaintiffs' proffered expert witnesses[2] will not cure the evidentiary deficiency on causation. Contradicting one of this Court's bases for denying summary judgment, Mem. & Order p.29, those witnesses will testify that terrain near planned gaps in the Arizona-Mexico border wall are passable. Moreover, Plaintiffs' purported experts broadly construe the suspension of border wall construction as categorically prohibiting all activity related to development of a border wall system. The hearing will show that this characterization is inaccurate. As for MPP, Plaintiffs and their experts offer conclusory opinions on causation that ignore alternative causes for migration and that disregard MPP's modest temporal and applied scope in the Tucson Sector. Plaintiffs' experts also ignore the decreased impact of MPP after Title 42 expulsions began in March 2020, and fail to account for MPP's lack of continued

---

[2] As explained later in this amended pretrial statement, neither Mr. Scott nor Mr. Morgan are qualified to testify about specific causation under Rule 702 of the Federal Rules of Evidence.

viability after Mexico disavowed continued participation.

If necessary, the Government will proffer testimony and evidence that the decision to suspend border barrier construction could not have harmed Plaintiffs Smith and Getzwiller based on the small amount of cancelled barrier in Arizona (and in contrast with the hundreds of miles of completed barrier), the presence of gaps that would have persisted even if that barrier had been built, and the passable topography of the area.  *See* Mem. and Order 28-29.  The Government will also present evidence, should it prove necessary, showing that the decision to terminate MPP could not have harmed the Plaintiffs because of the modest size and scale of implementation of MPP in the Tucson Sector and the further reduced impact of MPP while Title 42 was enforced during the global pandemic.  Additionally, implementation of MPP requires the cooperation of the Government of Mexico, and Mexico has stated that they will not accept any returns of individuals to Mexico under MPP.  If Messrs. Scott and Morgan are permitted to offer expert opinions on specific causation, the Government intends to offer its own expert econometrician, Dr. Jon Guryan, who will explain that Plaintiffs' experts have disregarded adopted, reliable, and credible methodologies for assessing a causal relationship between policy changes and impacts.

Finally, Defendants will explain that the holes in Plaintiffs' causation theories also constitute failures of proof in the redressability element of Article III standing.

**\*Defendants' Anticipated Motions to Exclude Messrs. Scott and Morgan**

At the May 23, 2024, conference, the Court stated it would address any *Daubert* objections on the day of the hearing.  May 23, 2024, Hrg. Tr. 19:3-17.  Accordingly, the Government will not file a formal written *Daubert* motion before the hearing and will make any motion orally following its voir dire of the witness.  Still, the Government provides the following

overview of the primary issues it expects to present to the Court in its anticipated oral motions to exclude Messrs. Scott and Morgan:

> Rule 702 allows a qualified expert to "testify on any subject that 'will assist the trier of fact to understand the evidence or to determine a fact in issue' if the testimony is sufficiently reliable." *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 85 (D.D.C. 2012) (quoting Fed. R. Evid. 702). "Testimony is reliable if '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Id.* Messrs. Scott and Morgan satisfy none of these requirements.
>
> Neither Mr. Scott nor Mr. Morgan used any discernable methodology to reach their opinions that the two challenged policies caused the injuries Plaintiffs assert. Instead, both witnesses vaguely invoke their experience as a way to filter a subset of relevant data to reach a causation conclusion. This approach does not meet the rigor required under Rule 702 and cannot be used to formulate opinions that the trier of fact considers.
>
> Relatedly, the selective and vague categories of data that Messrs. Scott and Morgan rely on do not constitute "sufficient facts or data" under Rule 702. Voir dire will show that Messrs. Scott and Morgan are aware of the complexity of the motivations for migration and the interplay between the two government policies Plaintiffs challenge here and other historical policy developments and factual developments that affect migration patterns. Messrs. Scott and Morgan cannot ignore the relevant data that affects migration and instead attribute all changes in migration patterns on the two challenged policies. Relatedly, neither Mr. Morgan nor Mr. Scott can cherry-pick the timeframe of their encounter data and ignore trends that pre-date the policy changes challenged here.

Finally, as discussed at the May 23 hearing regarding the proper scope of Rule 25(a)(2)(C), any expert opinion testimony from Messrs. Scott and Morgan should be limited to opinions reached during their employment with the federal government. *Am. Prop. Const. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 4-5 (D.D.C. 2011) (holding that non-retained experts may only "testify as to the information they obtained, and the opinions they formed, while performing the tasks they were hired to do" relevant to their participation in the facts of the case."); *accord Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 236-37 (N.D. Ill. 2013) ("[A] a treating physician is only retained when he 'gives opinions beyond the scope of his own observation.' . . . Thus, a former employee may be a non-retained expert for the purposes of Rule 26(a)(2) if he is a percipient witness and is testifying based upon his personal knowledge of the facts or data at issue in the litigation."). Voir dire will show that Mr. Morgan left federal employment before the two challenged policy changes were instituted and neither Mr. Scott nor Mr. Morgan formed any opinions about the specific impact the challenged policies had on Plaintiffs' or their properties until after they left federal employment.

**Schedule of Witnesses[3]**

| Name | Description | Time Est. | May/Will Call |
|---|---|---|---|
| *Cliff Sunda<br><br>*May be contacted only through counsel* | Mr. Sunda may offer expert testimony on a set of detailed maps of the area along the Arizona border with Mexico showing the approximate location of various barriers along the border, the local topography, and the location of Plaintiffs' properties. | 30 min. | May call |
| Paul Enriquez, Acquisitions, Real Estate, and Environmental | Mr. Enriquez is expected to offer testimony on border infrastructure projects, including those undertaken by DHS and the Department of Defense | 1 hour | Will call |

---

[3] As contemplated by the Local Rules, DHS may make further refinements to its witness and exhibit lists and deposition designations before the Court issuing a pretrial order.

| | | | |
|---|---|---|---|
| Director, Border Wall Program Management Office, U.S. Customs and Border Protection<br><br>*May be contacted only through counsel* | between 2018 and present within the State of Arizona.  Mr. Enriquez will offer testimony on the status of those projects in Arizona at the time President Biden took office.  Mr. Enriquez will offer testimony using maps showing border barrier constructed prior to 2019, new or replacement barrier constructed since 2018, where construction was suspended by DHS, and what border barrier projects have been undertaken during the Biden Administration. | | |
| *Jonathan Guryan, Ph.D.<br><br>*May be contacted only through counsel* | Dr. Guryan may offer expert opinion testimony on the methods used to analyze the causal impacts of policy changes and whether, based on the information provided by Plaintiffs and their experts, it is possible to conclude the border wall and MPP decisions caused the specific injuries alleged by Plaintiffs.  Dr. Guryan will offer critiques of the opinions of Plaintiffs' experts as set forth in their depositions (Plaintiffs produced no expert reports). | 1 hour | May call |
| John R. Modlin, Chief Border Patrol Agent, Tucson Sector<br><br>*May be contacted only through counsel* | Chief Modlin may offer testimony on the timing, size, scope, and implementation of MPP in the Tucson Sector over the timeframe since its inception until termination.  Chief Modlin may also offer testimony about encounters at and between ports of entry in the Tucson Sector during both the Trump and Biden Administrations.  Chief Modlin may also offer testimony on Title 42.  Finally, Chief Modlin may offer additional, non-duplicative testimony on the border barrier system in the Tucson Sector. | 45 min. | May call |

In addition, Defendant may call an authenticating witness for summary exhibits proffered under Rule 1006 should the Court rule that such a foundation must be attested to during the

8

hearing.

**\*Exhibit List**

Defendants' Exhibit List

The Government's Exhibit list is attached as **Exhibit A.** The Government will file an amended exhibit list before the June 28, 2024 conference. The Government will also provide Plaintiffs with copies of its Rule 1006 exhibits and the underlying data before the June 28, 2024 conference. The Government reserves the right to refine and supplement its exhibit list up until the Court issues a final pretrial order.

Defendants' Objections to Plaintiffs' Exhibits

In their pretrial statement, Plaintiffs identify three exhibits they intend to introduce at the upcoming evidentiary hearing: (1) a bar chart purportedly prepared by Senator Ron Johnson's office; (2) an 87-page transcript containing congressional hearing testimony by Chief John Modlin (and others)[4]; and (3) a 67-page compilation of excerpts from transcribed interviews with border patrol chiefs purportedly prepared by "Homeland Security Republicans." The Government objects to the authenticity of the first and third of Plaintiffs' exhibits and the wholesale admission of all three for the reasons set forth in the table in **Exhibit C**.

The Government reserves its right to supplement its objections apart from authenticity, which must be raised in advance of the pre-hearing conference under the Local Rules.

**\*Deposition Designations**

Defendants' Designations

Plaintiffs represented in their pretrial statement that only Plaintiff Smith (and not Plaintiff

---

[4] In their pretrial statement, Plaintiffs' express their intention to offer the testimony of Chief John Modlin specifically, Pls.' Pretrial Statement 3, and so the Government's objections are likewise limited to Chief Modlin's testimony.

Getzwiller) will testify at the hearing.  The Government *may* seek to offer portions of Plaintiffs' deposition testimony into evidence under Federal Rule of Civil Procedure 32(a)(3).  The Government's deposition designations for the Plaintiffs are set forth in the table in **Exhibit B.**  At the hearing, the Government may elect to offer only some of the testimony that it designated.

<u>Defendants' Objections to Plaintiffs' Designations</u>

Plaintiffs designate the deposition transcripts of plaintiffs Getzwiller and Smith and witnesses Scott and Morgan "*in their entirety*."  ECF No. 70 at 3 (emphasis added).  They cannot do so.

Federal Rule of Civil Procedure 32 governs the introduction of deposition testimony at trial.  There are three ways that deposition testimony can be introduced under that rule.  First, Rule 32(a)(3) allows that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  On its face, that avenue does not apply to any of the deposition transcripts Plaintiffs designated, because none of them are depositions taken of an *adverse party*—two are of Plaintiffs themselves and the remaining two are of Plaintiffs' expert witnesses.

The second avenue under Rule 32(a)(2) does not apply here either.  Rule 32(a)(2) allows that "[a]ny party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence."  Fed. R. Civ. P. 32(a)(2).  Plaintiffs, however, are not seeking to use the depositions only to impeach their witnesses (a permissible use) but seek to move all four transcripts into evidence "in their entirety."  Pls.' Pretrial Statement 3.  But Plaintiffs' own deposition testimony and that of their experts is inadmissible hearsay unless the witnesses are unavailable.  *Compare Ramirez v. U.S. Immigration and Customs Enf't*, No. 18-508, 2019 WL 1164323 (D.D.C. Nov. 20, 2019)

(finding plaintiffs could introduce deposition testimony of defendants under either Rule 32(a)(2) or (3) even if the witnesses were available to testify).

The third avenue in subpart (a)(4) comes into play where the witness is unavailable for trial for one of five reasons. *See* Fed. R. Civ. P. 32(a)(4)(A)-(E). Because Plaintiffs intend to produce Plaintiff Smith, Mr. Scott, and Mr. Morgan to testify at the hearing, *see* Pls.' Pretrial Statement at 3, they cannot also introduce their deposition testimony under Rule 32(a)(4), based on any unavailability to testify. As to Ms. Getzwiller, Plaintiffs may be able to use her deposition testimony at the hearing if they can establish that one of the five circumstances in subpart (4) applies. Their pretrial statement, however, does not attempt to do so.

Finally, Plaintiffs' designations of the transcripts "in their entirety" is overbroad. Each of the Plaintiffs' transcripts is over 150 pages long and the transcripts of Mr. Scott and Mr. Morgan are significantly longer. The transcripts include inadmissible hearsay, colloquy, and material that is irrelevant to the narrow issue to be addressed at the hearing. *See* ECF No. 66 ("Those dispositive motions have winnowed down the live issues to whether Plaintiffs have standing to sue regarding two specific policies. And the Court's upcoming evidentiary hearing is designed to address that issue, and that issue alone.").

**Damages**

Neither party seeks monetary damages in this case.

**Relief Sought on the Issue of Standing**

The United States seeks dismissal of Plaintiffs' two remaining claims (Count II and Count III) for lack of Article III standing.

**<u>*Other Issues to be Addressed at the Pre-Hearing Conference</u>**

<u>Deadlines for the Exchange of Exhibits and Stipulations</u>

The Government proposes that the Court set a deadline for the exchange of a final witness list and trial exhibits of Friday, **July 19**.  The Government proposes that the Court set the same deadline of **July 19** for stipulations of fact or admissibility of documents that may obviate the need to call certain witnesses (for example, Mr. Sunda), or streamline testimony in consideration of the time constraints imposed by a one-day hearing.  The Government intends to present summaries of voluminous data under Federal Rule of Evidence 1006 and will provide these exhibits to Plaintiffs, along with the underlying data, before the June 28, 2024, hearing.  The Government would propose that any such summaries be deemed admissible without the need to call a witness to authenticate them unless Plaintiffs lodge an objection by **July 12**.

<u>Deadline by which Plaintiffs Must Properly Designate Deposition Testimony</u>

The Government proposes that the Court set a deadline of **July 12** by which Plaintiffs must designate specific portions of Ms. Getzwiller's transcript by page and line number (provided they first meet the conditions of Rule 32(a)(4)) that they wish to introduce at the hearing so that the Government may provide its counter-designations and, if necessary, lodge objections in advance of the hearing.

<u>Opening and Closing Statements</u>

The Government proposes that the parties forego opening or closing statements at the evidentiary hearing, both in the interest of completing the hearing within the scheduled day and because the Court, having previously reviewed two dispositive motions and heard oral argument on the parties' cross-motions for summary judgment, is familiar with the facts of the case and the parties' main arguments on standing.  In any event, the Government requests that the Court

clarify its expectations regarding opening and closing statements at the pre-hearing conference.

Post-Hearing Briefing on Remedy

In the event the Court finds that one or both Plaintiffs have standing to challenge DHS's border wall and MPP decisions, the Government believes supplemental briefing on remedy is necessary. At oral argument on the parties' cross-motions for summary judgment, Plaintiffs recognized the difficulty in crafting an appropriate remedy should they prevail, suggesting that if it is not practicable to reinstate the challenged programs, the Court should instead order DHS to conduct an environmental analysis "after the fact." Aug. 31, 2023 Hrg. Tr. 16:5-8, ECF No. 53. But NEPA is intended to inform *prospective* agency action through the analysis of different alternatives, which here would necessarily include returning to a policy that was terminated three years ago. NEPA does not require the analysis of scenarios that are not viable. Accordingly, Defendants' position is that before imposing any remedy the parties should be allowed to brief the Court on the factors outlined in *Allied-Signal v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) and other equitable factors and circumstances as may be relevant to the Court's discretion to craft an appropriate remedy.

Dated: June 14, 2024

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

*/s/ Erika Danielle Norman*
ERIKA NORMAN (CA 268425)
SEAN C. DUFFY (NY 4103131)
TYLER ALEXANDER (CA 313188)
Trial Attorneys
Natural Resources Section
150 M Street NE
Washington, DC 20002
Tel: (202) 305-0475 (Norman)
Fax: (202) 305-0506
email: erika.norman@usdoj.gov

sean.c.duffy@usdoj.gov
tyler.alexander@usdoj.gov

*Attorneys for Defendants*