UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| MASSACHUSETTS COALITION FOR IMMIGRATION REFORM, *et al.*,<br><br>                     Plaintiffs,<br><br>          v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br><br>                     Defendants. | Case. No. 20-cv-3438 TNM |

## **PLAINTIFFS' AMENDED PRETRIAL STATEMENT (L.C.R. 16.5)**

In accordance with Local Rule 16.5, Plaintiffs file this Pretrial Statement 14 days before the rescheduled pretrial conference on June 28, 2024. The Court has set an evidentiary hearing on July 31, 2024 on the question of whether Plaintiffs Steven Chance Smith and Gail Getzwiller have standing to challenge the termination of the Border barrier system and the termination of the Migrant Protection Protocols ("MPP") under the National Environmental Policy Act ("NEPA") because the terminations of those policies caused them to suffer environmental harms.

**Statement of the Case**

The Plaintiffs, a group that included both individual citizens and organizations, filed their first Amended Complaint against Defendants Department of Homeland Security ("DHS"), Department of State ("DOS") and Department of Justice ("DOJ") on September 3, 2021, challenging several immigration related actions taken by the Biden Administration for failing to comply with the National Environmental Policy Act ("NEPA"), a federal claim. Plaintiffs alleged that they suffered environmental harms from the increased illegal migration caused by the Biden

1

Administration actions and that the defendant agencies violated the law by implementing these actions without conducing NEPA compliance. Among these actions were the termination of the Migrant Protection Protocols ("MPP") and the suspension by Defendant DHS of all border barrier system projects in accordance with President Biden's Proclamation 10142, "Termination of Emergency with Respect to the Southern Border of the United States and Redirection of Funds Diverted to Border Wall Construction." Defendant DHS interpreted this Proclamation as requiring that it must cease *all* components of the border barrier system and issued a memorandum to that effect on June 9, 2021.

After the administrative record was produced, the parties both moved for summary judgment. In its memorandum order ruling on the parties' motions, issued on September 30, 2023, the Court determined that an evidentiary hearing was necessary to resolve the standing on the claims of Plaintiff Steven Chance Smith and Plaintiff Gail Getzwiller, who both live by the southwest border and have experienced an "uptick of migrant activity near them" D.E. # 52 at 24. With migrant activity comes "increased litter, buried detritus," and other environmental harms such as personal safety concerns. *Id.* "The only question is whether a reasonable factfinder could conclude that Government's conduct caused those harms." *Id*. at 28. At the evidentiary hearing, therefore, parties will have the opportunity to introduce evidence as to whether it is more likely than not, or more unlikely than not, that the suspension of the border wall system and the termination of MPP caused the uptick in migrant activity that caused the Plaintiffs' environmental harm. This hearing will take place on July 31, 2024.

**Statement of Claims**

Plaintiffs claim that Defendants Department of Homeland Security, Department of State, and Department of Justice violated NEPA and the Administrative Procedures Act ("APA") when

they terminated MPP and suspended construction of the border barrier system without conducting environmental analysis.

**Statement of Defenses:**

Defendants claim that Plaintiffs' evidence of standing does not establish sufficient certainty under the applicable legal standard.

**Schedule of Witnesses**

Plaintiffs will call the following witnesses, all of whom Plaintiffs expect to be present:

1) Rodney Scott,* Chief of the U.S. Border Patrol from February 2020 to August 2021. Mr. Scott served as a U.S. Border Patrol ("USBP") agent and federal law enforcement agent for over 29 years, under five different presidential administrations. Mr. Scott began his career in 1992, competitively progressed through the ranks and earned key leadership roles to include Deputy Executive Director of U.S. Customs and Border Protection, (CBP), Office of Anti-terrorism, Director of CBP, Office of Anti-terrorism: Director of CBP, Office of Incident Management and Operations Coordination, Patrol Agent in Charge, Brown Field Station, Chief Patrol Agent, El Centro Sector, and Chief Patrol Agent, San Diego Sector.

Mr. Scott is expected to testify as to how MPP and the border barrier system were key pillars of a working strategy that effectively deterred entry throughout the southwest border, including the Tucson sector where the Plaintiffs live. As Chief of the Border Patrol, Mr. Scott received a daily report of the entire southwest border and has personal familiarity with communities where the Plaintiffs live and that anyone who

lives in those communities are affected by the traffic that flows through that area. Mr. Scott is expected to testify how he can be sure that the end of MPP and the border barrier system, by creating the border crisis, increased the environmental harms experienced by the Plaintiffs because the termination of these policies were felt throughout the border communities in Arizona—not merely in specific areas where the border barrier system had gaps.

Mr. Scott's testimony is expected to take an hour and a half, and he may only be contacted through counsel.

2) <u>Mark Morgan</u>,* Commissioner of Customs and Border Protection from July 2019 to January 2021. Mr. Morgan has also served as the Chief of the U.S. Border Patrol and the Director of U.S. Immigration and Customs Enforcement.

Mr. Morgan is expected to testify as to how he was instrumental in developing the MPP and border barrier system and how he knew they were effective in securing the border. He will testify how during the transition DHS provided briefings to the Biden transition team and provided the team reliable data compiled internally showing that if the Biden Administration terminated MPP and the border barrier system it would create chaos on the Southwest border, as precisely happened. He will explain how MPP ended "catch and release" and how the border barrier system was designed to be as effective a barrier as possible through the entire southern border allowing security to be established along the entire southwest border.

Mr. Morgan's testimony is expected to take an hour and a half, and he may only be contacted through counsel.

3) Steven Chance Smith, Plaintiff. Mr. Smith is expected to testify to the personal environmental impacts he suffered because of the crisis caused by the termination of MPP and the border barrier system. These harms include increases in litter, brush fires, and physical danger from increased cartel presence in the areas he spends his time.

Mr. Smith's testimony is expected to take half an hour and this witness may only be contacted through counsel.

**Exhibit List**

1) Plaintiffs expect to use "SW Border Encounters from 2012 to 2024, Monthly Totals by Border Patrol and Ports of Entry," March 2024, compiled by Senator Ron Johnson. This exhibit is also listed by Defendants as DEF_0001364. This chart is a graph of total encounters by Border Patrol agents from 2012 to 2024 with key dates of policies implemented indicated. The content of this exhibit was compiled from cbp.gov/newsroom/stats

2) Plaintiffs may use live demonstrations from cbp.gov/newsroom/stats to pull data in order to illustrate points and respond to statements that may be made by Defendants' witnesses with official data from Customs and Border Protection.

3) Plaintiffs may use "On the Front Lines of the Border Crisis, a hearing with Chief Patrol Agents: Hearing Before the Committee on Oversight and Accountability House of Representatives 118th Congress, First Session" February 7, 2023. This is a transcript of testimony by Defendant's potential fact witness.

4) Plaintiffs may use "Appendix: First-Hand Accounts of the Crisis From Border Patrol Sector Chiefs, Committee on Homeland Security Majority Report," December 21, 2023.

This includes statements made by Defendant's potential fact witness to the Committee of Homeland Security in transcribed interviews.

5) Plaintiffs may use "Border Security Improvement Plan," December 21, 2018. This is a plan by DHS for better border security.

6) Plaintiffs may use "Border Security Status Report" January 12, 2021. This is a report of activities by Border Patrol to secure the border.

7) Plaintiffs may use from the Administrative Record "Proclamation 10142 of January 20, 2021, Termination of Emergency With Respect to the Southern Border of the United States and Redirection of Funds Diverted to Border Wall Construction."

8) Plaintiffs may use from the Administrative Record "Department of Homeland Security Border Wall Plan Pursuant to Presidential Proclamation 10142, June 9, 2021"

9) Plaintiffs may use from the Administrative Record "Amendment to DHS Border Wall Plan Pursuant to Presidential Proclamation 10142, and Request for Approval of Amendment to the Department of Homeland Security's Border Wall Plan Pursuant to Presidential Proclamation 10142, June 29, 2022.

10) Plaintiffs may use from the Administrative Record, U.S. Customs and Border Protection Department of Defense Funded Border Barrier System, February 26, 2021 and Chart of US Customs and Border Protection Border Wall Funding as of February 28, 2021.

11) Plaintiffs may use from the Administrative Record U.S. Border Patrol Barrier System Path Forward, updated April 7, 2021.

12) Plaintiffs may use from the Administrative Record, Termination of the Migrant Protection Protocols, October 29, 2021.

13) Plaintiffs may use from the Administrative Record, Explanation of the Decision to Terminate the Migrant Protection Protocols, October 29, 2021

14) Plaintiffs may use from the Administrative Record, Termination of the Migrant Protection Protocols, June 1, 2021.

15) Plaintiffs may use Defendant's Expert Report from Dr. Guryan.

**Deposition Designations**

Plaintiffs seek to offer into the evidentiary record the depositions of Plaintiff Gail Getzwiller, Plaintiff Steven Chance Smith, Witness Rodney Scott, and Witness Mark Morgan in their entirety, which is necessary because Defendants offer misleading conclusions, in their expert report and in their planned testimony, based on selective portions of all of these depositions. The full contexts of the testimony in the depositions needs to be available on the record if needed. Should Defendants call Dr. Guryan as a witness, Plaintiffs may seek to offer portions of Dr. Guryan's May 20, 2024 deposition. The designated portions are:

18:23-19:5
19:22-20:1
21:17-20
32: 5-8
38:21-39:9
47:12-20
68:25-69:3
70:18-71:4
74:6-76:4

**Damages**

The parties do not seek monetary damages.

**Relief Sought by Plaintiffs**

Plaintiffs seek injunctive and declaratory relief stating that it was unlawful to end the MPP and suspend the border barrier system until the agencies complemented an Environmental Impact Statement under NEPA.

**Plaintiffs' Anticipated Daubert Motion**

Plaintiffs will make a motion to exclude Defendant's expert, Dr. Jonathan Guryan on the day of the hearing, as instructed by the Court in the May 23rd status conference.

**Status of Discovery**

Defendants have failed to meet their discovery obligations in a substantial way that prejudices Plaintiffs. Not only did Defendants provided incomplete responses to Plaintiffs' interrogatories with no valid objection for most of their refusals, and refused Plaintiffs' requests for admissions, most importantly, they also refused to produce the vast majority of responsive documents to Plaintiffs' requests for production. They provided only a belated and cherry-picked tiny portion of responsive documents, in response to Plaintiffs' eight requests for production. This cherry picked and woefully incomplete production of clearly responsive, not privileged, and relevant documents from the Defendants, relating to the international causes of migration, is a substantial issue.  Sufficiency of the evidence is the Defendants' main argument in defense, and Defendants have repeatedly stated that Plaintiffs must produce more evidence than merely the testimony of their experts (competent border officials) and Plaintiffs. Defendants, the agencies in charge of immigration policy, are therefore hiding the very evidence from Plaintiffs regarding the causes of migration to the United States, on which they base their defense.

Dated: June 14, 2024

Respectfully Submitted,

/s/ Julie Axelrod

D.C. Bar No. 1001557
Center for Immigration Studies
1629 K Street, NW, Suite 600
Washington, DC, 20006
Telephone: 202-466-8185
FAX: 202-466-8076
Email: jba@cis.org

Counsel for Plaintiffs