## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MASSACHUSETTS COALITION FOR IMMIGRATION REFORM**, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:20-cv-03438 (TNM) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Steven Smith, an Arizona cattle rancher, sued the Biden Administration for canceling some of the first Trump Administration's border policies without first assessing the environmental impact.  After a bench trial, the Court found for Smith and ordered briefing on the appropriate remedy.  But before briefing was complete, the 2024 presidential election changed the landscape.  President Donald Trump returned to the White House and reversed his predecessor's decisions—the same decisions the Court found procedurally flawed.

This is good news for Smith.  He has gotten what he wanted all along:  The first Trump Administration's border programs are back.  Their reimplementation washes away the environmental risks Smith faced from the hasty terminations.  The remaining question is whether Smith's vindication in the political arena moots his legal vindication.

Smith believes the case is still live, and relief remains available.  Not so.  The disputed actions are dead and gone, and none of Smith's arguments to the contrary can resuscitate the case.  His proposed relief would affect only his *past* rights, not his present rights or his rights in

the future.  So the Court will deny Smith's motion for injunctive and declaratory relief and dismiss the case as moot.

**I.**

The Court has recounted the sprawling facts here many times.  *See Mass. Coal. for Immigr. Reform v. DHS ("MCIR I")*, 621 F. Supp. 3d 84, 88–90 (D.D.C. 2022); *Mass. Coal. for Immigr. Reform v. DHS ("MCIR II")*, 698 F. Supp. 3d 10, 16–22 (D.D.C. 2023); *Mass. Coal. for Immigr. Reform v. DHS ("MCIR III")*, 2024 WL 2208206, at *1 (D.D.C. May 15, 2024); *Mass. Coal. for Immigr. Reform v. DHS ("MCIR IV")*, 752 F. Supp. 3d 13, 15–27 (D.D.C. 2024).  A short recap suffices for today's purposes.

This case started off with many Plaintiffs and many claims.  *MCIR IV*, 752 F. Supp. 3d at 16.  When all was said and done, one Plaintiff prevailed on two claims.  *See id.*  After a two-day bench trial, the Court found that Smith was harmed by decisions from the Department of Homeland Security ("DHS") to halt construction of the border wall and rescind the Migrant Protection Protocols ("MPP") without assessing the environmental impact.  *Id.*  The termination of these programs caused an uptick in the number of illegal immigrants trespassing on Smith's land.  *See id.* at 18–20.  With increased immigration came environmental issues—water theft and discarded trash littering Smith's property.  *See id.*  Both created health risks for Smith's cattle. *See id.*

The Court concluded that the Government's termination of border wall construction and the MPP were procedurally improper.  *See id.* at 16.  Both were "major Federal actions" within the meaning of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(C), so the Government was required to analyze the environmental effects of those decisions before implementing them.  *See MCIR IV*, 752 F. Supp. 3d at 17, 34.  But it did not, so the Court ruled

for Smith on his two Administrative Procedure Act claims.  *See id.* at 34; Am. Compl., ECF No. 17, at 104–06 (Counts II and III).

The Court then requested briefing on the appropriate remedy.  *MCIR IV*, 752 F. Supp. 3d at 34.  Smith asked the Court to: (1) "vacate the termination directives" until the Government complied with NEPA; (2) enter declaratory judgment that "DHS was obligated to conduct an" environmental assessment "before terminating" the programs; and (3) enter an injunction requiring DHS to "initiate a reasonable planning process to . . . expeditiously restart border wall construction and the MPP."  Mot. Inj., ECF No. 82, at 16.  The Government objected to each of these proposals.  *See* Mot. Inj. Opp'n, ECF No. 83, at 7–9.  It maintained that, at most, the Court should remand for DHS to comply with NEPA.  *See id.* at 30.

But before the remedies question was fully briefed, President Trump prevailed in the 2024 presidential election.  With the new Administration came new priorities and a return to previous immigration policies.  *See* Pl.'s Mootness Br., ECF No. 92, at 2, 3 (acknowledging that "the Second Trump Administration has re-instated policies from the First Trump Administration" and "reversed the termination of MPP and border wall construction").  Upon taking office, President Trump immediately declared that preventing illegal immigration was "one of [his] most important obligations" and promised to "marshal all available resources and authorities to stop" it.  Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025).  In line with this, he directed DHS to "take all appropriate action to deploy and construct temporary and permanent physical barriers to ensure complete operational control of the southern border of the United States."  *Id.* at 8468.  He also instructed DHS to "take all appropriate action to resume the Migrant Protection Protocols."  *Id.*

3

The gears of government turned swiftly to implement the President's directives.  The Secretary of Homeland Security began issuing waivers of "certain laws, regulations, and other legal requirements in order to ensure the expeditious construction of barriers and roads in the vicinity of the international land border in the state of California."  *See* 90 Fed. Reg. 15153 (Apr. 8, 2025) (San Diego Sector); 90 Fed. Reg. 23534 (June 3, 2025) (El Paso Sector).  Similar waivers followed for barriers in Arizona and Texas.  *See* 90 Fed. Reg. 23946 (June 5, 2025) (Tucson Sector in Arizona); 90 Fed. Reg. 23535 (June 3, 2025) (Yuma Sector in Arizona); 90 Fed. Reg. 29574 (July 3, 2025) (Rio Grande Valley Sector in Texas); 90 Fed. Reg. 41589 (Aug. 26, 2025) (Rio Grande Valley Sector in Texas).  Rodney Scott, who had been Smith's star witness at trial, became Chief of the U.S. Border Patrol.  *See MCIR IV*, 752 F. Supp. 3d at 19–20 (recounting his testimony); U.S. Customs and Border Protection, "Rodney S. Scott, Commissioner" (June 23, 2025) [https://perma.cc/E4NC-568R].

Next came appropriations from Congress.  The One Big Beautiful Bill Act, signed this summer, allocates over $46.5 billion for construction of the border wall.  Pub. L. No. 119-21, 139 Stat. 72, 357 (July 4, 2025).  DHS announced in a press release that it has already begun construction and has plans to build hundreds of miles of border walls in total.  *See* Def.'s Mootness Br., ECF No. 93, at 3; Dep't of Homeland Security, "Six Months of Keeping America Safe Under President Trump and Secretary Noem" (July 20, 2025) [https://perma.cc/SGN8-8RC3].  The same press release also noted that "President Trump immediately reinstated [the] 'Remain in Mexico'" policy, otherwise known as the MPP.  *Id.*; *see* Mot. Inj. at 6.

This political sea change drove the parties to evaluate the possibility of an out-of-court settlement.  *See* Joint Mot. to Cont. Status Conf., ECF No. 85.  Those negotiations fell through, so the Court ordered the parties into mediation.  Status Conf. Tr., ECF No. 87, 3:11–17; 4:20–25.

The Court forecasted that if mediation failed, briefing on mootness might be necessary.  *See id.*
at 2:15–22; 5:11–13.  Mediation failed, prompting the Court to direct simultaneous briefing on
mootness and potential remedies.  *See* Joint Status Report, ECF No. 91; Min. Order dated July 1,
2025.

 In his mootness briefing, Smith maintains that relief is still available.  On top of his
previous proposals, he says the Court can: (1) order DHS to conduct NEPA analysis in the future
if it again seeks to terminate border wall construction or the MPP; and (2) order NEPA analysis
of the Biden Administration's past decisions because it could help future decisions about border
security.  *See* Pl.'s Mootness Br. at 4, 6–7.  The Government counters that the case is fully moot
now and no further relief is available.  *See* Def.'s Reply, ECF No. 94.  Briefing is complete, so
the Court turns to these issues.

## II.

 "Derived from Article III, the mootness doctrine ensures that federal courts decide only
actual, ongoing controversies."  *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1127 (D.C. Cir.
2024) (cleaned up).  "[W]hen the issues presented are no longer live or the parties lack a legally
cognizable interest in the outcome," a case is moot.  *Samma v. Dep't of Def.*, 136 F.4th 1108,
1113 (D.C. Cir. 2025).  This limitation keeps courts from overstepping "their constitutionally
assigned role" and prevents them "from rendering impermissible advisory opinions."  *Pub.
Citizen*, 92 F.4th at 1127–28.

 Mootness is fluid.  "Even where litigation poses a live controversy when filed, a federal
court must refrain from deciding the dispute if events have so transpired that the decision will
neither presently affect the parties' rights nor have a more-than-speculative chance of affecting
them in the future."  *Id.*  Put simply, "[t]he central question of all mootness problems is whether

changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) (cleaned up).

## III.

This case is moot. Any further action by this Court regarding the Biden Administration's now-reversed policy cancellations "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pub. Citizen*, 92 F.4th at 1128. As the D.C. Circuit has "repeatedly recognized, the government's abandonment of . . . challenged [conduct] is just the sort of development that can moot an issue." *Samma*, 136 F.4th at 1113 (cleaned up). Such is the case here.

Smith asked the Court to reverse the cancellation of border wall construction until the decision underwent NEPA analysis. But the cancellation has been rescinded and the Government is moving full steam ahead on its construction efforts. *See* Def.'s Mootness Br. at 2–4. Smith also wanted the Court to undo the termination of the MPP pending a NEPA assessment. But the MPP has been reinstated. *See id.* There is no reason for this Court to order NEPA analysis of actions the Government is no longer pursuing or pause the implementation of decisions the Government has already walked back. *See Akiachak Native Cmty. v. United States Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) ("Because that [policy cancellation] no longer exists, we can do nothing to affect [the plaintiff's] rights relative to it, thus making this case classically moot for lack of a live controversy."); *cf. Trump v. Hawaii*, 583 U.S. 941 (2017) (holding that a challenge to provisions of an executive order that "expired by their own terms" was moot (cleaned up)).

Though his victory came through political channels rather than the judiciary, Smith has won.  He has the outcome he wanted all along and the environmental risks posed by the cancellation of these programs are no more.  *See Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) ("[Mootness] occurs when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that [he] has sought.").

Smith disagrees.  He maintains this case is still live because: (1) voluntary cessation triggers a heightened standard that prevents mootness; (2) the capable of repetition yet evading review exception to mootness applies; and (3) the Court can still provide meaningful relief.  The Court evaluates and rejects these arguments in turn.

### A.

Start with voluntary cessation.  If a party voluntary stops its challenged behavior to short-circuit litigation, it triggers a "heightened voluntary-cessation standard" rather than the "ordinary mootness test."  *Pub. Citizen*, 92 F.4th at 1128, 1130.  Under that standard, the case remains live unless it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 1128 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  This "rule traces to the principle that a party should not be able to evade judicial review . . . by temporarily altering questionable behavior."  *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).  In other words, it prevents litigants from gaming the system.

But the voluntary cessation doctrine "does not apply automatically" any time a defendant decides to cease challenged conduct.[1]  *Pub. Citizen*, 92 F.4th at 1128.  It instead requires some

---

[1] The Government does not make this specific argument, but "it is appropriate for the Court to evaluate mootness based on its own assessment of the record."  *Sharp v. Rosa Mexicano, D.C.,*

"arguable manipulation of [the Court's] jurisdiction."  *Id.*; *see also Alaska v. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) ("The established law of this circuit is that the voluntary cessation exception to mootness has no play when the agency did not act in order to avoid litigation." (cleaned up)); *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) ("Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." (cleaned up)).

The Court has no reason to question the sincerity of the Government's policy decisions. In fact, Smith himself makes no claim that the Government is trying to game the system.  *See* Pl.'s Mootness Br. at 3.  At most, he points out that DHS has acknowledged the MPP policy may one day end.  Pl.'s Reply at 3 (citing DHS's *Draft Programmatic Environmental Assessment for Actions Related to the Migrant Protection Protocols (MPP) Program* ("MPP Environmental Assessment"), ECF No. 92-4, at 10).

Announcing plans to revert policies post-litigation can, at times, signal manipulation.  *See United States v. Sanchez-Gomez*, 584 U.S. 381, 386 n.* (2018) (finding voluntary cessation when the "Government represent[ed] . . . that [it] intend[ed] to reinstate its [challenged] policy once it [was] no longer bound" by an adverse judicial ruling); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982) (finding voluntary cessation when a city "announced . . . [its] intention" to "reenact[] precisely the same [challenged] provision if [a] District Court's judgment were vacated").  But when read in context, even a cynical interpretation of DHS's words does not allow for that conclusion here.  The DHS document Smith cites is, somewhat ironically, a NEPA assessment for the MPP's reimplementation.  *See*

*LLC*, 496 F. Supp. 2d 93, 97 (D.D.C. 2007); *see also Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1522 (D.C. Cir. 1994) ("[Courts] are obliged to address the issue *sua sponte* because mootness goes to the jurisdiction of th[e] court.").

MPP Environ'l Assm't at 10 (citing NEPA as its basis).  It tries to gauge the MPP's potential environmental impact over the program's full lifecycle but clarifies that "DHS has not established a temporary or permanent cessation date for the MPP program."  *Id.* at 19.  Thus, the possible future termination of the MPP is speculative and there is no indication the Government plans to cancel it again the moment litigation concludes.  One out-of-context statement about the MPP's projected duration is not enough to conjure the specter of bad faith, especially where Smith himself does not see it.

More, there is ample reason to believe the Government's cessation was *not* done to manipulate jurisdiction.  Instead, it was driven by political considerations wholly unrelated to this case.  Resuming stricter immigration policies was a major campaign issue for President Trump in the 2024 election.  *See Exclusive: Biden Races to Sell Off Border Wall Parts Before Trump Takes Office*, Daily Wire (Dec. 12, 2024)[2] [https://perma.cc/5C9M-632M] ("Trump made clear during his campaign that he intends to finish construction of the border wall.").  Upon retaking the White House, the Trump Administration immediately declared its intent to make good on those promises.  *See* Exec. Order No. 14165.  Nothing about this behavior indicates the Government resumed border wall construction or the MPP to stymie this litigation.  Indeed, given the President's longstanding views on immigration and the border wall, any suggestion that he has changed tactics because of this case is risible.

---

[2]  "[I]n the APA context, the Court may consider documents in the public record of which the court may take judicial notice."  *ITServe All., Inc. v. Dep't of Homeland Sec.*, 590 F. Supp. 3d 27, 41 (D.D.C. 2022).  The Court looks to this particular article because Smith cited it in his remedies reply brief.  *See* ECF No. 84 at 8.

In short, "[t]his is not a case in which a party sought to strategically avoid judicial review by ceasing a challenged activity," *Samma*, 136 F.4th at 1114, so the "ordinary mootness test" applies instead of the heightened voluntary cessation standard. *Pub. Citizen*, 92 F.4th at 1130.

Even if the Court *did* apply the heightened standard, the case would still be moot. The Government has carried its burden to show that: "(1) there is no reasonable expectation that the alleged violation[s] will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation[s]." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (cleaned up).

As the Government correctly notes, any possibility of repetition hinges on a tenuous series of assumptions. *See* Def.'s Reply at 3. The Court would first need to assume the next presidential election will usher in an administration hostile to the programs. *See Alaska*, 17 F.4th at 1229 ("Intervening events, such as elections . . . are unpredictable."). Next, it would have to theorize that the future administration will fully terminate the programs rather than revising or replacing them. *See id.* ("The content of any future regulation is currently unknowable."). Then, it would need to presuppose that DHS will not conduct any NEPA assessments of those future actions.[3] And finally, the Court would need to speculate that future immigration conditions remain such that Smith will again be injured and have standing to challenge DHS's decision. *See MCIR IV*, 752 F. Supp. 3d at 28–30 (discussing Smith's standing). "It takes more than such quixotic speculation to save a case from mootness." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 15 (D.C. Cir. 2019).

---

[3] This is an especially tenuous assumption for the MPP because DHS has shown it would probably do further NEPA analysis before ending the program. *See* MPP Environ'l Assm't at 13, 20 (explaining that if the MPP ends, "reevaluation of these [environmental] effects would likely be required" and "[s]ubsequent analysis would be completed as needed.").

Smith retorts that no legal barriers affirmatively prevent repetition, so the Government cannot show it is impossible. *See* Pl.'s Mootness Br. at 3; Pl.'s Reply, ECF No. 95, at 3. But "the mere power to reenact a challenged policy is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged policy likely will be reenacted." *Larsen*, 525 F.3d at 4 (cleaned up). The Court finds no such evidence here. On these facts, there is no reasonable expectation that the alleged violations will recur.

As for the second requirement under the heightened voluntary cessation standard, the reinstatement of these programs has "eradicated the effects of" the previous cancellations by undoing the increased environmental risks Smith faced. *Larsen*, 525 F.3d at 4. Thus, the Court finds that the heightened standard for voluntary cessation does not apply here, but even if it did the case would still be moot.

## B.

Next, consider the capable of repetition yet evading review exception. *See* Pl.'s Mootness Br. at 3. The case is not moot if Smith can "demonstrate that (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that [he] would be subjected to the same action again." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (cleaned up). But this is a "narrow exception for quick-burning disputes," *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1288 (D.C. Cir. 2016), and it applies only in "exceptional circumstance[s]." *Del Monte*, 570 F.3d at 322.

As Plaintiff, Smith has the burden of showing this exception's applicability. *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209 (9th Cir. 2021); *see also Del Monte*, 570

F.3d at 322. And "the recurring legal wrong must be defined in terms of the precise controversy it spawns." *L'Assoc. des Americans Accidentels v. U.S. Dep't of State,* 633 F. Supp. 3d 74, 80 (D.D.C. 2022) (cleaned up).

Take the MPP first. Smith contends that "litigating the appropriate procedural steps required for . . . termination of MPP is a process that can easily outlast the program." Pl.'s Reply Br. at 3. But the MPP is an ongoing policy without a set duration. *See* MPP Environ'l Assm't at 13 ("DHS cannot, with reasonable certainty, establish a firm future cessation date for the MPP program."). If Smith means a future administration *could* terminate the MPP before litigation concludes, that misunderstands the test. "Circuit precedent requires us to determine whether the activity challenged is '*inherently*' of a sort that evades review." *Campbell v. Clinton*, 203 F.3d 19, 34 (D.C. Cir. 2000) (emphasis added). Typically, this means programs that last for less than two years. *See Burlington N. R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996) ("[B]oth Supreme Court and circuit precedent hold that orders of less than two years' duration ordinarily evade review."); *see, e.g., Del Monte*, 570 F.3d at 322 (applying exception where a challenge to a one-year annual license could not be "fully litigated before [its] expiration" each year). The MPP does not fit that bill. Given its indefinite nature, there is no reason to find its cancellation would evade review. Instead, if the Government again cancels the MPP in the future sans NEPA review, the cancellation "will be subject to judicial review *at that time.*" *Am. Bar Ass'n v. F.T.C.*, 636 F.3d 641, 648 (D.C. Cir. 2011).

As for border wall construction, Smith contends only that it is capable of repetition. *See* Pl.'s Reply at 3–4. He makes no claim that it can evade review. *See id.* To the contrary, Congressional appropriations indicate that border wall construction will not be inherently short in duration. *See* Pub. L. No. 119-21, 139 Stat. 72, 357 (July 4, 2025) (appropriating construction

funds through 2029); *id.* at 360 (appropriating $10 billion for border wall construction grants to state and local governments through 2034).

In sum, Smith cannot satisfy the first prong of the exception—capable of evading review—for either the MPP or the border wall.  The challenged actions here are not the kind of "quick-burning disputes" that escape judicial review.  *Safari Club*, 842 F.3d at 1288; *see also* Def. Reply at 3 (making this point).  The MPP has an indefinite duration, so it is not "inherently of a sort that evades review."  *Clinton*, 203 F.3d at 34 (cleaned up).  And Smith makes no effort to show that the border wall issue is capable of evading review.  In any event, he could not make such a showing, for substantially the same reasons as discussed above.  Because he "cannot satisfy the first" prong of the exception for either program, "we need not examine the second." *S. Co. Servs. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005).  Smith has not shown the "exceptional circumstance[s]" necessary for applying the exception.  *Del Monte*, 570 F.3d at 322.

## C.

Finally, consider whether meaningful relief is still available.  Smith maintains that vacatur of the now-defunct policies would still provide relief "[g]iven the legal uncertainty of voluntary reversal of the unlawful policies."  Pl.'s Mootness Br. at 6.  He points out that separate litigation has waylaid full reinstatement of both policies despite the Trump Administration's swift efforts.[4]  *See id.*  Because of this, he believes vacatur "has the potential to hasten the restoration of these policies by removing the impediment of potential court orders based on

---

[4] The MPP is subject to dueling judicial stays.  One court stayed the Biden Administration's rescission, while another court stayed the Trump Administration's reimplementation.  *See* Def.'s Mootness Br. at 3–4.  The Ninth Circuit limited the scope of the reimplementation stay pending appeal, so it currently only applies to the parties in that case.  *See Immigr. Defs. L. Ctr. v. Noem*, 2025 WL 2017247, at *14 (9th Cir. July 18, 2025).  The waiver to expedite border wall construction in Arizona is also being challenged.  *See* Pl.'s Mootness Br. at 5–6.

subsequent challenges." Pl.'s Reply at 2. But this potential relief is opaque and relies on a speculative daisy-chain of future events that may or may not occur in separate litigation. The contingent nature of the relief highlights that it does not "have a more-than-speculative chance of affecting [Smith's rights] in the future." *Pub. Citizen*, 92 F.4th at 1128; *see also United States v. Juv. Male*, 564 U.S. 932, 937 (2011) ("True, a favorable decision in this case might serve as a useful precedent for [Smith] . . . But this possible, indirect benefit in a future lawsuit cannot save *this* case from mootness.").

Smith next argues the Court could issue a forward-looking order directing DHS to conduct analysis before it "ever repeats the challenged actions." Pl.'s Mootness Br. at 6. But "it would be entirely inappropriate for this court to issue an advisory opinion to guide the agency's" hypothetical future decision making. *Am. Bar Ass'n v. F.T.C.*, 636 F.3d 641, 648 (D.C. Cir. 2011) (cleaned up). The Court will not speculate on what NEPA may or may not require in relation to a currently non-existent agency action. If subsequent DHS decisions spark legal concerns, a court can evaluate the concerns when they ripen.

Smith also says the Court could order NEPA analysis of the Biden Administration's past decisions, despite their reversal by the Trump Administration. "[B]order security is never finished once and for all," so Smith believes evaluating the past decisions could help inform future border security programs. Pl.'s Mootness Br. at 6. But NEPA is not a tool for abstract guidance. "Importantly, the textually mandated focus of NEPA is the 'proposed action'—that is, the project at hand." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 145 S. Ct. 1497, 1515 (2025). It is "not applied retrospectively to completed projects." *Nat'l Wildlife Fed'n v. Appalachian Reg'l Comm'n*, 677 F.2d 883, 889–90 (D.C. Cir. 1981). And it certainly "does not require agencies to commence . . . reviews of projects not actually proposed." *Delaware*

*Riverkeeper Network v. FERC*, 753 F.3d 1304, 1318 (D.C. Cir. 2014).  Simply put, under the plain terms of NEPA, there is nothing left here to review.

Smith tries to get around these limitations by suggesting the Court could treat "border security policies" as one unified project.  Pl.'s Mootness Br. at 7.  Then, the Court could order a programmatic NEPA review of the border security program and its "many related" components, including the ones he challenged.  *See id.*  But as the Government correctly notes, Smith already tried this approach earlier in litigation and the Court rejected it.  *See* Def.'s Reply at 3 n.2.  In Count XI, Smith tried to use the APA to challenge DHS's failure to conduct NEPA analysis for a program he styled as the "Biden Population Actions."  Am. Compl. ¶¶ 253–57.  But the "program" was not really a program.  It was a "lump[ed] together" collection of discrete actions on border security, each of which required its own individual challenge.  *MCIR I*, 621 F. Supp. 3d at 97.  So the Court dismissed the claim as unreviewable under the APA because "labeling diffuse actions a 'program' does not a program make."  *Id.*  The same holds true here.  The Court will not entertain Smith's renewed efforts to treat the discrete challenged actions as part of a unitary border security "program."

That leaves Smith's request for declaratory relief.  He wants a judgment declaring that the Government should have conducted NEPA analysis before the now-reversed program terminations.  "[A] plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy."  *Del Monte*, 570 F.3d at 321.  But if a plaintiff "merely attacks an isolated agency action, then the mooting of [a] specific claim moots any claim for a declaratory judgment that the specific action was unlawful."  *J. T. v. Dist. of Columbia*, 983 F.3d 516, 522 (D.C. Cir. 2020) (cleaned up).

15

Smith's challenges were directed at two isolated actions taken without NEPA analysis: Cancellation of border wall construction and termination of the MPP. Neither decision is ongoing, and purely retrospective declaratory judgment is not an option. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("[D]eclaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction."); *see also Larsen*, 525 F.3d at 4 ("[A]ny injunction or order declaring [a rescinded policy] illegal would accomplish nothing— amounting to exactly the type of advisory opinion Article III prohibits.").

Smith tries to avoid this outcome by arguing the Government has an "underlying practice of not performing the analysis required by NEPA." Pl.'s Mootness Br. at 2. But his only substantiation is one other unrelated case in which the Government failed to perform NEPA analysis. *See id.* That is not enough. More, his position is undermined by the fact that DHS *has* conducted NEPA analysis on its most recent action involving the MPP. *See* Pl.'s Mootness Br. at 4 (acknowledging this); MPP Environ'l Assm't.

Thus, on these facts, "a grant of declaratory relief would not achieve any useful objective." *Spivey v. Barry*, 665 F.2d 1222, 1235 (D.C. Cir. 1981). The case remains moot.

## IV.

Smith worries that "abandon[ing] this case at such an 'advanced stage' would prove 'more wasteful than frugal.'" Pl.'s Mootness Br. at 3 (quoting *Friends of the Earth*, 528 U.S. at 192). Yet "[t]his argument from sunk costs does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest." *Friends of the Earth*, 528 U.S. at 192. The controversy fueling this case met its demise in the political arena,

16

and Smith emerged victorious.  On these facts, there is no continuing dispute and no relief the judiciary can offer Smith that the political branches have not already given him.

For these reasons, the Court will deny Smith's motion for injunctive and declaratory relief and will dismiss the case as moot.  A separate Order will issue today.


Dated: September 18, 2025                    _____

                                            TREVOR N. McFADDEN, U.S.D.J.